WO                                                                                         SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Shawn Franklin Reid,

Plaintiff,

v.

Centurion, et al.,

Defendants.

No. CV 20-01893-PHX-JAT (JFM)

**ORDER**

Plaintiff Shawn Franklin Reid, who is confined in the Arizona State Prison Complex-Yuma, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 6). The Court granted the Application and dismissed the Complaint with leave to amend (Doc. 8). Plaintiff filed a First Amended Complaint (Doc. 10), which the Court dismissed with leave to amend (Doc. 11.) Plaintiff has filed a Second Amended Complaint (Doc. 13). The Court will order Defendants Corizon, Barcklay, Jordan, Smalley, and Nguella-Nana to answer Counts I and II of the Second Amended Complaint and will dismiss the remaining claim and Defendants without prejudice.

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II. Second Amended Complaint

In his three-count Second Amended Complaint, Plaintiff alleges a denial of constitutionally adequate medical care and an equal protection violation. Plaintiff sues David Shinn, the Director of the Arizona Department of Corrections, Rehabilitation, and Reentry (ADC), Deputy Director Richard Pratt, Corrections Officer (CO) IV C. Roman; Records Custodian Shery Estrada; and Culinary Supervisor John Doe. He also sues

Corizon LLC ("Corizon"), a private entity, which until June 30, 2019, provided medical care for ADC prisoners under a contract with ADC; Centurion LLC ("Centurion"), another private entity that since July 1, 2019 has provided medical care to ADC prisoners under a contract with ADC; and the following individuals, who are or were employed by Corizon and/or Centurion at the Yuma Complex: Drs. Karen Barcklay[1] and Elijah Jordan; Hepatitis C Treatment Specialist Carrie Smalley; Nurse Practitioner Clariss Nguella-Nana[2]; Head Nurse Marcel Meza; and Facility Health Administrators (FHAs) Lori Johnson, Brian Hofer, and Benjamin Schmid. Plaintiff seeks injunctive, compensatory, and punitive relief.

Plaintiff alleges the following in **Count I**:

Corizon was paid millions of dollars to provide health care to ADC prisoners, including $5.1 million in 2018 for hepatitis C (HCV) treatment. ADC, Corizon, and, later, Centurion, adopted the Federal Bureau of Prisons' Clinical Guidance Manual for Evaluation and Management of Chronic Hepatitis C Infection ("BOP Manual").[3]

---

[1] This Defendant appears as Barcklay-Dodson on the Arizona Medical Board website. *See* https://azbomprod.azmd.gov/GLSuiteWeb/Clients/AZBOM/public/WebVerification Search.aspx?q=azmd&t=20210624091834 (last accessed June 24, 2021).

[2] On a Lab Test Order/Procedure submitted with his First Amended Complaint, this Defendant is listed as Clarisse Ngueha-nana. (Doc. 10 at 19.)

[3] Plaintiff appears to refer to a version of the manual issued prior to the current version of the manual, the January 2018 Manual. The Court cites to Plaintiff's allegations concerning that version of the BOP Manual in the Second Amended Complaint. The January 2018 version is located at https://www.bop.gov/resources/pdfs/012018_hcv_infection.pdf. It describes "[w]hat's new" from the previous version as

• Two new combination [Direct Acting Antiviral] medications have been FDA-approved for the treatment of chronic [HCV] infection and are now included in Section 6, Recommended Treatment Regimens . . .

• Recommended HCV treatment regimens have been updated to reflect the current guidance from the American Association for the Study of Liver Diseases (AASLD).

• The APRI cutoff for treatment Priority Level 2 has been lowered to ≥ 0.7.

• The appendices containing drug information tables are no longer included in this guidance. In light of the rapidly changing HCV treatment landscape, providers are now refer[r]ed to manufacturer's prescribing information, Facts and Comparisons (available in BEMR), and other

According to the BOP Manual, AST and platelet counts are used to calculate an APRI score, which is the preferred non-invasive method to assess hepatic fibrosis and cirrhosis. According to the BOP Manual, prisoners with an APRI score of 2.0 or greater should have an abdominal ultrasound to assess whether cirrhosis is present. According to the Manual, the APRI score may be used to predict the presence of significant fibrosis, which are designated as Stage 2 to Stage 4. According to Plaintiff, the BOP Manual provided that advanced hepatic fibrosis is reflected by an APRI score greater than 2.0; on biopsy, a Metavir[4] or Batts-Ludwig score[5] at stage 3 or 4; or known or suspected cirrhosis. Plaintiff reports that according to the BOP Manual, persons at an intermediate level show evidence of progressive fibrosis demonstrated by an APRI greater than 0.7 and Stage 2 fibrosis on liver biopsy.[6]

In addition to the BOP Manual, Corizon and Centurion followed ADC guidelines contained in its Clinical Practice Guidelines for the Prevention and Treatment for Viral

---

validated resources for the most up-to-date information on individual HCV drugs.
https://www.bop.gov/resources/pdfs/ 012018_hcv_infection.pdf (last accessed June 24, 2021).

[4] According to https://www.verywellhealth.com/what-is-your-metavir-score-1759917,

> The METAVIR score is a tool used to evaluate the severity of fibrosis seen on a liver biopsy sample from a person who has hepatitis C. The grade indicates the amount of inflammation in the liver and the stage represents the amount of scarring or fibrosis. Since symptoms, blood tests, and calculations are unable to define the degree of fibrosis, tests such as the METAVIR score and others are used to determine who should be treated and when, to monitor the progression of chronic liver disease, and more.

(last accessed June 24, 2021).

[5] "The Batts-Ludwig system is the most widely used scale for assessing grade (amount of necroinflammatory activity) and stage (degree of fibrosis) in chronic hepatitis." *See* https://www.pathologyoutlines.com/topic/liverchronichepgrading.html (last accessed June 24, 2021).

[6] The 2018 BOP Manual cites as evidence for progressive fibrosis an APRI score equal to or greater than 0.7 and Stage 2 fibrosis on liver biopsy. 2018 BOP Manual, at p.9. It sets high priority for treatment when the APRI is equal or greater than 2.0, or Metavir or Batts/Ludwig stage 3 or 4 on liver biopsy, or known or suspected cirrhosis. *Id.* at 8.

Hepatitis C (2017) ("ADC Manual").[7] The ADC Manual adopted the high, intermediate, and low levels cited in the BOP Manual. The ADC Manual also contained treatment criteria for HCV including the absence of medical contraindications for treatment, stage of the disease, absence of behavioral risks, sentence length, and remaining length of the sentence to be served.

According to Plaintiff, a normal AST level falls between 7 and 45 and a normal ALT level falls between 15 and 40. (Doc. 13 ¶¶ 24, 25.) Further, according to Plaintiff, a drug-induced liver injury is marked by an elevation in hepatic enzymes, which results from the effect of the drug or its metabolites on the liver. (*Id.* ¶ 26.)

Plaintiff entered ADC custody in May 2015 and during processing, medical staff determined that Plaintiff had HCV. As of May 2015, Plaintiff had an AST level of 53 and an ALT level of 88. On July 8, 2016, Plaintiff had an AST level of 51 and an ALT level of 98. Plaintiff also had very high iron levels. According to Plaintiff, a person with HCV who has an increase of iron in the "liver parenchyma tends to indicate chronic liver damage."[8] (*Id.* ¶ 31.) In other words, when Plaintiff entered ADC custody, he already had elevated AST and ALT levels and a very high iron level that indicated chronic liver damage.

Beginning in May 2016, despite knowing or having reason to know that Plaintiff had HCV, medical staff "prescribed" him 600 mg. of ibuprofen and 350 mg of Tylenol, which were both contraindicated by his HCV status as noted in medication disclosures.[9] (*Id.* ¶¶ 37, 53.) Plaintiff claims that Defendants Barcklay, Johnson, Hofer, Smalley, Jordan,

---

[7] Plaintiff appears to refer to Appendix C, § 2.0 of the Health Services Contract Monitoring Bureau Technical Manual. *See* https://corrections.az.gov/sites/default/files/documents/PDFs/hsmbtechmanual_110617.pdf (last accessed June 24, 2021).

[8] "The liver parenchyma is mostly comprised by liver cells (hepatocytes). The major supporting cells are Kupffer cells and stellate cells. Kupffer cells are the resident mononuclear phagocytes. . . . Activated stellate cells acquire characteristics of collagen-producing myofibroblasts and are responsible for the production of fibrous tissue." *See* https://www.hepatitis.va.gov/HEPATITIS/course/index.asp?page=/provider/courses/livertests/livertests-03& (last accessed June 24, 2021).

[9] Plaintiff does not allege for how long he was prescribed these medications or why.

Meza, and Nguella-Nana acted with deliberate indifference to his HCV by prescribing him these medications. (*Id.* ¶ 54.) In 2017, Plaintiff requested treatment for his HCV but his requests were denied by Corizon and its employees, Carli Meyer and Defendants Jordan, Smalley, and Barcklay.[10] According to Plaintiff, Barcklay "ignored" his request. (*Id.* ¶ 36.) During 2017, a CT scan showed Plaintiff's liver was normal; it is unclear whether the CT scan was performed in response to Plaintiff's requests or grievances concerning treatment of his HCV.[11] (*Id.* ¶ 48.)

By April 2019, at least four studies reported severe adverse effects of fluconazole on persons with HCV. (*Id.* ¶ 32.) In addition, medication disclosures for fluconazole specifically provided liver failure could occur and that it could worsen existing liver and kidney disease. (*Id.* ¶¶ 51-52.) Despite knowing or having reason to know that Plaintiff had HCV, Plaintiff was prescribed fluconazole for skin rashes. On May 23, 2019, Plaintiff's blood tests revealed an AST level of 196 and an ALT level of 263, which according to Plaintiff, reflected near liver failure. Plaintiff submitted a grievance about having been prescribed fluconazole and his high AST and ALT levels. In response to his grievance, "all medications injurious to Plaintiff were discontinued." (*Id.* ¶ 43.) Plaintiff contends that Defendants Barcklay, Johnson, Hofer, Smalley, Jordan, Meza, and Nguella-Nana acted with deliberate indifference to his HCV by prescribing him fluconazole. (*Id.* ¶ 55.)

In January 2020, Plaintiff was diagnosed with severe liver damage and stage 4 liver disease. In March 2020, Plaintiff began to receive HCV treatment following years of being denied treatment. Plaintiff contrasts his 2017 CT scan that showed his liver as normal

---

[10] Plaintiff describes Meyer as a Defendant, but Plaintiff did not include Meyer as a defendant in his Second Amended Complaint. Plaintiff also asserts that Centurion was liable for failing to act on his grievances, but as Plaintiff himself states, Centurion did not begin treating ADC prisoners until July 1, 2019, and could not, therefore, be held accountable for the purported denial of treatment in 2017.

[11] This test could also have been performed in connection with Plaintiff's prostate, as Plaintiff received a PSA test for prostate cancer, which had a PSA level in the "above high normal" range, on April 25, 2017. (*Id.* ¶ 30.)

against the 2020 CT scan, which showed Plaintiff's liver was severely damaged. Plaintiff ascribes this damage to Defendants' refusal to treat his HCV in the preceding years and prescriptions of contraindicated medications.

Plaintiff claims that Corizon denied him HCV treatment between 2015 to 2019[12] as part of its long-standing practice.[13] Plaintiff claims that Defendants Corizon, Centurion, Pratt, Schmid, Barcklay, Johnson, Hofer, Smalley, Jordan, and Meza acted with deliberate indifference by refusing to treat his HCV prior to 2020. He also claims that Defendants Barcklay, Johnson, Hofer, Smalley, Jordan, Meza, and Nguella-Nana failed or refused to properly review and screen all medications prescribed to him to ensure they were not contraindicated. (*Id.* ¶ 50.) Plaintiff claims that Defendants Corizon, Centurion, Pratt, Schmid, Barcklay, Johnson, Hofer, Smalley, Jordan, Meza, and Nguella-Nana failed to follow their own guidelines (presumably referring to the BOP Manual and the ADC Manual) when they denied, delayed, or intentionally interfered with medical treatment for his HCV, which he contends was necessary. (*Id.* ¶¶ 58, 60.)

Plaintiff claims that his HCV was reflected in his prison medical records and it was common knowledge that HCV slowly damages the liver over many years and often progresses to irreversible scarring and cirrhosis. Plaintiff claims that in light of the above, the failure to treat his HCV constituted deliberate indifference.

In **Count II**, Plaintiff repeats the allegations in Count I. He claims that he was prescribed fluconazole, ibuprofen, and Tylenol despite his HCV, which was documented in his prison medical records and which was known or should have been known to Defendants Corizon, Centurion, Pratt, Schmid, Barcklay, Johnson, Hofer, Smalley, Jordan,

---

[12] Plaintiff states that Corizon denied him HCV treatment between 2015 and 2018, but, as described above, Corizon continued as the medical care provider until mid-2019, and, according to Plaintiff, he did not begin to receive HCV treatment until months after Corizon's term as the medical care provider ended.

[13] Plaintiff alleges that practice is evidenced in other prisoner cases, including *Coppess v. Ryan*, 4:18cv00118-TUC-JAS (D. Ariz. Sept. 26, 2019) (granting defendants summary judgment), *aff'd* No. 20-15295 (9th Cir. Mar. 31, 2021), and *Vasko v. Hacker-Agnew*, 2:17cv00784-PHX-DJH (JZB) (D. Ariz. June 16, 2021) (pending dismissal pursuant to settlement).

Meza, and Nguella-Nana, such that prescribing him those medications amounted to deliberate indifference. (*Id.* ¶ 68.) He contends that this conduct by the Defendants constituted intentional infliction of unnecessary pain and suffering and constituted deliberate indifference to his serious medical needs.

As relevant to Counts I and II in the Second Amended Complaint, Plaintiff previously submitted the following documents with his First Amended Complaint:

- A July 2, 2019 Lab Test Order/Procedure (fibrotest/Actitest) ordered by Nurse Practitioner Ngueha-nana, and reporting Plaintiff's ALT level and his Alpha-2-Macroglobulin were "Above High Normal" and severe fibrosis.[14] (Doc. 10 at 19.)
- A September 12, 2019 report from South County Diagnostic Services ordered by Defendant Smalley as part of Plaintiff's HCV surveillance. Dr. Peter Mernalakis reported: "Impression: 1. Cirrhosis without focal hepatic mass. 2. Nonobstructing left renal calculus. No left or right hydronephrosis."[15] (Doc. 10 at 19.)
- A November 26, 2019 Inmate Informal Complaint Resolution in which Plaintiff stated that he held Defendants Meyers, Ngueha-nana, Barklay, Hofer, and Smalley responsible for prescribing him Tylenol, ibuprofen, and fluconazole at "exceedingly high" dosages that caused a spike in his Apri scores, liver inflammation, and severe pain and side-effects and requesting that all medications be checked regarding dangers they posed to persons with HCV. (Doc. 10 at 20.)

In **Count III**, Plaintiff alleges that Defendants Roman, Estrada, and Doe denied him equal protection and alleges the following:

Plaintiff attempted to exhaust administrative remedies and to resolve his concerns about his medical care. According to Plaintiff, Defendant Roman insisted that Plaintiff

---

[14] Fibrosis is the abnormally large amount of scar tissue in the liver. Although fibrosis does not itself cause symptoms, severe scarring can result in cirrhosis, which can cause symptoms. *See* https://www.merckmanuals.com/home/liver-and-gallbladder-disorders/fibrosis-and-cirrhosis-of-the-liver/fibrosis-of-the-liver#:~:text=Fibrosis%20is%20the%20formation%20of,cirrhosis%2C%20which%20can%20cause%20symptoms (last accessed June 24, 2021).

[15] "Hydronephrosis is the swelling of a kidney due to a build-up of urine. It happens when urine cannot drain out from the kidney to the bladder from a blockage or obstruction. Hydronephrosis can occur in one or both kidneys." *See* https://www.kidney.org/atoz/content/hydronephrosis#:~:text=Hydronephrosis%20is%20the%20swelling%20of,and%20fluid%20from%20the%20body (last accessed June 24, 2021).

1  alter dates on forms Plaintiff submitted.

2  In preparing to file this case, Plaintiff requested copies of his medical records and told Estrada that he sought the copies for legal purposes. Non-party D. Gonzalez informed Plaintiff that he could not have copies of his medical records. Plaintiff contends that Estrada was required by state law to provide him copies of his medical records.[16]

Plaintiff was prescribed a special diet of gluten-free renal fare to ensure that he received adequate nutrition after the seriousness of his liver disease was discovered. Despite being approved for the gluten-free renal diet, Defendant Doe "disapproved" the diet and limited it to "renal fare" absent medical approval. Plaintiff does not describe the differences, if any, between the two diets or any resulting harm.

**III.    Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated a plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983

---

[16] DO 1104.3 addresses the process to obtain copies of medical records following receipt of a subpoena or Inmate Letter identifying the specific portions of the medical record to be copied, at which point the Medical Record Monitor must forward the request to the Attorney General's Office to determine whether requirements to obtain copies have been complied with. *See* https://corrections.az.gov/sites/default/files/policies/1100/1104_103020.pdf (last accessed June 24, 2021). Plaintiff does not describe when or how he complied with DO 1104.3.

1  suits, a plaintiff must plead that each Government-official defendant, through the official's
2  own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

3  Finally, although pro se pleadings are liberally construed, *Haines v. Kerner*, 404
4  U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of
5  action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal
6  interpretation of a civil rights complaint may not supply essential elements of the claim
7  that were not initially pleaded. *Id.*

### A. Medical Care

Plaintiff alleges that he was denied constitutionally adequate medical care. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F.

Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### 1. Defendants Shinn, Pratt, Johnson, Hofer, and Meza

Plaintiff sues several individual Defendants. Plaintiff fails to allege any facts against Director Shinn or Pratt, and, as noted above, a Defendant cannot be held liable under § 1983 based on a theory of respondeat superior. Accordingly, Shinn and Pratt will be dismissed.

Plaintiff sues FHAs Johnson, Hofer, and Schmid. None of these Defendants are healthcare providers and Plaintiff otherwise fails to allege facts to support how he was denied constitutionally adequate medical treatment of his HCV by any of them. Accordingly, these Defendants will also be dismissed.

Finally, Plaintiff sues Head Nurse Meza. Plaintiff does not allege that Meza, as head nurse, had the power or authority to prescribe him medical treatment. Rather, Meza is claimed to have overseen nursing staff. Plaintiff does not otherwise allege Meza was in any way impeded any prescribed treatment for his HCV. Accordingly, he fails to state a claim against Meza and Meza will be dismissed.

### 2. Corizon and Centurion

Plaintiff again sues Corizon and Centurion. Each is a private entity that contracted with ADC to provide medical care to ADC prisoners over different periods of time. To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his

1  constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1139; *Buckner*, 116 F.3d at 452.

Plaintiff has not alleged that Centurion had a policy or practice resulting in injury to him. Therefore, he fails to state a claim against it and it will dismissed.

Plaintiff alleges that Corizon had a practice of denying and delaying HCV treatment when treatment was warranted under the BOP and ADC Manuals causing Plaintiff to be harmed. The Court will require Corizon to respond to Counts I and II of the Second Amended Complaint.

### B. Equal Protection

In Count III, Plaintiff alleges a claim for violation of equal protection against Defendant Roman for insisting that Plaintiff change the dates on forms submitted by Plaintiff, against Defendant Estrada by refusing to provide him copies of his medical records under state law, and against Defendant Doe for modifying a prescribed medical diet.[17] Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff has not alleged he is a member of a protected class.

The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been

---

[17] Plaintiff does not allege facts to support these Defendants were involved in his medical care. As the Court previously explained, Department Order (DO) 802.05.2 provides that a CO IV shall forward a formal grievance to the Contract Director of Nursing to address. Plaintiff does not allege that Roman failed to forward his grievance to the Contract Director of Nursing, or that Roman otherwise had any role in his medical care.

intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). Plaintiff has failed to allege facts to support that he was treated differently than other similarly situated individuals and absent a rational basis for doing so. Accordingly, Plaintiff fails to state a claim in Count III, and it will be dismissed.

**IV.   Claims for Which an Answer Will Be Required**

Plaintiff alleges that he was denied constitutionally adequate medical treatment for his HCV pursuant to a practice of Corizon to deny or delay medically appropriate treatment of his HCV. He further alleges that he was prescribed medications, contraindicated by his HCV, by Defendant-providers Barcklay, Jordan, Smalley, and Nguella-Nana. Defendants Corizon, Barcklay, Jordan, Smalley, and Nguella-Nana will be required to respond to Count I and Defendants Barcklay, Jordan, Smalley, and Nguella-Nana will be required to respond to Count II.

**V.   Warnings**

   **A.   Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

   **B.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

   **C.   Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a

copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Count III is **dismissed** without prejudice.

(2) Defendants Centurion, Shinn, Pratt, Schmid, Johnson, Hofer, Meza, Estrada, Roman, and Doe are **dismissed** without prejudice.

(3) Defendants Corizon, Barcklay, Jordan, Smalley, and Nguella-Nana must answer Counts I and II.

(4) The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (Doc. 13), this Order, and both summons and request for waiver forms for Defendants Corizon, Barcklay, Smalley, Jordan, and Nguella-Nana.

. . . .

(5) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order,

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)     The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(8)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(9)     A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10)    The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

> (a)     personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

> (b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant

pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11) Defendants must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 1st day of July, 2021.

_____
James A. Teilborg
Senior United States District Judge